THE STATE, JEREMIAH ADAMS, PROSECUTOR, v. MARK T. RULON ET AT., RESPONDENTS.

1. Where, in an application for a public road, the beginning and ending points were stated with sufficient exactness, but the line of the road was not described definitely, the term "about" being used to qualify what would otherwise be specific, the surveyors are not bound to any fixed courses, but may lay the road out in the general direction called for.

2. The assessment of damages to "the heirs of" one deceased is not a sufficient designation of the persons to whom the award was made, and the proceedings and return will be remitted for amendment.

*Certiorari* in matter of highway.

The writ issued to remove into this court the return of a public road laid out in Gloucester county, the legality of which was attacked on the ground of variance between the road as applied for and the road laid out.

The description of the road in the application presented to the Court of Common Pleas, and in the order of appointments, is as follows, viz.: "Beginning in said township of Harrison, at a stake in the middle of the Kays Mill road, said stake being forty-four links from the east corner of Jeremiah Chapman's crib and wagon-house, from which it bears north, eighty-six degrees east, and running thence from said stake about north, sixty-three degrees west, through lands of Jeremiah Chapman, Jeremiah Adams and Christian Kesting, to the line of Frances S. Thompson's land; thence in the township of Woolwich, about north, sixty-five degrees west,

through lands of Frances S. Thompson and Joseph and William Gleeson, to the middle of Russell's Mill road; thence about north, sixty-five degrees west, through Mark T. Rulon, to the line of Samuel M. Parker's land; thence about north, seventy degrees west, through lands of Samuel M. Parker, twenty chains or thereabouts, to a point near the head of a ravine; thence yet through said Parker's land, about north, seventy-four degrees west, to or a little beyond the line between said Parker's land and lands late of James Gibbs, deceased; thence about north, fifty-seven degrees west, through the said Gibbs' land and partly through Alfred Bradshaw's land, to a point near the head of a ravine; thence about north, seventy-one and a half degrees west, through lands of said Bradshaw and Gibbs, to a point at the edge of the Gloucester and Salem turnpike, which point is between eleven and twelve rods below the dwelling-house occupied by Benjamin Bowman."

The following is the description of the road as laid out and returned by the surveyors of the highways, viz.: " Beginning in the township of Harrison, at a stake in the middle of the Kays Mill road, said stake being forty-four links from the east corner of Jeremiah Chapman's crib and wagon-house, from which it bears north, eighty-six degrees east, and running thence from said stake north, sixty degrees and twelve minutes west, through lands of Jeremiah Chapman, Jeremiah Adams, Christian Kesting and Frances S. Thompson, sixty-seven chains and sixty-three links, to a stake in the line between lands of Francis S. Thompson and Charles Shoemaker; thence along said line, and the line between lands of Charles Shoemaker and James R. Shoemaker, on the one side, and lands of Joseph and William Gleeson on the other, north, forty-eight degrees and twenty minutes west, twenty-three chains and six links, to a stake near a cedar tree; thence through lands of the said Joseph and William Gleeson north, seventy-two degrees and ten minutes west, ten chains and thirteen links, to the middle of the Russell Mill road; thence yet the same course through lands of Mark T. Rulon, ten

chains and twenty-one links, to a stake opposite to said Rulon's house; thence through lands of Mark T. Rulon and Samuel M. Parker north, sixty-four degrees and thirty-seven minutes west, twenty-three chains and fifty-nine links, to a point five links on the west side of a cherry stump; thence yet through said Parker's land north, seventy-seven degrees and fifty minutes west, twenty chains and sixty-two links, to a stake; thence through lands of said Parker, and of the heirs of James Gibbs, deceased, north, seventy-four degrees west, twenty-nine chains and two links, to the line of Alfred Bradshaw's land; thence the same course through land of said Bradshaw, four chains and seventy-three links, to a stake; thence north, seventy-one and a half degrees west, through lands of said Bradshaw and of the heirs of James Gibbs aforesaid, seven chains and seventy-three links, to a stake in the edge of the Gloucester and Salem turnpike road, said stake being two chains and ninety-five links in a southwesterly course below the dwelling-house of Benjamin Bowman, and seventy links northwesterly from a buttonwood tree in the edge of said turnpike road, and there to end."

Argued at February Term, 1888, before Justices VAN SYCKEL, KNAPP and DIXON.

For the prosecutor, *R. S. Clymer*.

For the respondents, *Thomas E. French*.

The opinion of the court was delivered by

KNAPP, J.  Two objections are pressed against the legality of this road return.  First, that there is a fatal variance between the road as applied for and that laid out by the surveyors.

Second, that the assessment of damages failed to specify with legal certainty the persons to whom the damages were awarded.

As to the first alleged error, it has been said repeatedly by

this court, in cases of which *State* v. *Atkinson*, 3 *Dutcher* 420, and *State* v. *Hulick*, 4 *Vroom* 307, are examples, that to specify with exactitude in a road application the lines of course upon which the road is proposed, limits the surveyors of the highways in their action substantially to the prescribed route, and leaves to that body no discretion to deviate from it, even if such departure should be found necessary in order to attain other objects required by the Road act to be regarded in laying a highway. No case has, however, directly decided against the validity of a road laid out differing in location from that specifically applied for; yet, the accepted interpretation justifies the conclusion that such action would be illegal.

The question here presented is whether the case shows such variance.

The description in the application, as will be seen in the copy of the return, is peculiar; but it cannot, as I think, be said to describe a line definitely. The singular employment of the word "about" qualifying what would otherwise be specific, renders the description quite indefinite, as much so as if the application had called for a road to be laid from the beginning point, running in a northwesterly direction to the designated ending. This, indeed, seems to be its effect; and the surveyors appear thus to have interpreted and treated it. The beginning and ending points were stated with sufficient exactness, and to these the road, as laid, conformed. As the surveyors were not bound to any fixed courses, and laid the road in the general direction called for, there is no basis for this objection, and this part of the return should be affirmed.

The assessment of damages to "the heirs of James Gibbs, deceased," was not a sufficient designation of the persons to whom the award was made. The persons should be named. But this is an error which, under the statute, may be amended. This part of the assessment of damages should be set aside, and the proceedings and return remitted to the Court of Common Pleas of Gloucester county, to the end that the surveyors be called together to amend the error in the assessment.